UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MITCHELL DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CV-00128 JAR |
| | ) | |
| ALAN EARLS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Alan Earls' unopposed motion for summary judgment[1] (Doc. No. 27). For the following reasons, the motion will be granted.

**Background**

Pro se plaintiff Mitchell Dunn, a Missouri inmate confined at Potosi Correctional Center ("PCC"), brings this action under 42 U.S.C. § 1983 against defendant Alan Earls ("Earls"), Deputy Warden at PCC, arising from his detention in single-cell administrative segregation. (Complaint ("Compl."), Doc. No. 1).[2] Specifically, Plaintiff alleges he is being held in Administrative Segregation "for no apparent lawful reason." (Id.). Plaintiff asserts that he has already served in excess of twelve months in administrative segregation for assault and that the Administrative Segregation Committee "has gone above the law by holding [him] falsely in

---

[1] Defendant filed his motion for summary judgment on December 5, 2016. On January 18, 2017, this Court granted Plaintiff thirty (30) days to file an opposition brief, and cautioned him that failure to comply with the Court's order would result in the Court ruling on Defendant's unopposed motion (Doc. No. 30). Plaintiff did not file an opposition brief.

[2] Plaintiff's official-capacity claims were dismissed on February 3, 2016 as barred by sovereign immunity; Defendants Joey Arcand, Brian Boyer, and Jason Lee, were dismissed without prejudice on February 3, 2016 (Doc. Nos. 3, 4). His remaining claim is directed against Defendant Earls in his individual capacity.

detention when there is no valid reason." (Id.).[3] Plaintiff further alleges the Committee stated that he was never going to be released to the general population "unless [he] take[s] a program." (Id.)

Defendant Earls moves for summary judgment on the grounds that Plaintiff was not deprived of a liberty interest when he was placed in administrative segregation; that appropriate procedures for review of his placement were followed; and that sufficient evidence supported findings that his placement was appropriate because he presented a risk to the safety and security of the institution. Earls also argues he is entitled to summary judgment based on the doctrine of qualified immunity.

**Facts**[4]

---

[3] It appears that at the time this action was filed, Plaintiff had been confined in administrative segregation at PCC for approximately 14 months.

[4] The facts are taken from Defendant's Statement of Uncontroverted Material Facts ("SOF"), Doc. No. 29. Plaintiff did not respond to Defendant's Statement of Uncontroverted Material Facts. Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L. R. 4.01(E). As a result of Plaintiff's failure to submit any response, Plaintiff has not met the requirements of Local Rule 4.01(E), and is deemed to have admitted all facts in Defendant's Statement of Uncontroverted Facts. Turner v. Shinseki, No. 4:08-CV-1910 CAS, 2010 WL 2555114, at *2 (E.D. Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D. Mo. 1999)). However, Plaintiff's failure to respond properly to Defendant's motion does not mean summary judgment should be automatically granted in favor of Defendant. Even if the facts as alleged by Defendant are not in dispute, those facts still must establish he is entitled to judgment as a matter of law. Cross v. MHM Corr. Servs., Inc., No. 4:11-CV-1544 TIA, 2014 WL 5385113, at *3 (E.D. Mo. Oct. 10, 2014).

On June 14, 2014, while incarcerated at South Central Correctional Center ("SCCC"), Plaintiff was placed in administrative segregation following a serious assault on his cellmate. He pled guilty to the assault and was sentenced to five years to run concurrently with his existing sentence. On October 9, 2014, Plaintiff was transferred from SCCC to PCC for safety and security reasons. Upon his arrival, he received a classification hearing regarding his continued assignment to administrative segregation and was subsequently placed in a single-man cell because of his extreme assaultive behavior towards other offenders (Doc. No. 28-12).

Plaintiff's classification status was next reviewed on November 6, 2014, and continued (Doc. No. 28-5). Following a review of his classification status on February 5, 2015 (Doc. No. 28-6), Plaintiff was moved to a two-man cell. Within days, Plaintiff requested protective custody from his cellmate (Doc. No. 28-7) and was moved back to single-man status "for his own safety or that of others" and "for the security and good order of the institution" (Id.; Doc. No. 28-22). On March 11, 2015, Plaintiff was again moved to a double-man cell (Doc. Nos. 28-8, 28-22). That same day, Plaintiff indicated that he wished to be removed from the cell, and that if he were not removed, he would harm his cellmate. Plaintiff received a conduct violation for this threat. (Doc. Nos. 28-8, 28-23). He was moved to another double-man cell, but on March 12, 2015, requested protective custody from his new cellmate, and moved back to a single-man cell "for the security and good order of the institution." (Doc. No. 28-10).

On April 28, 2015, Plaintiff filed an Informal Resolution Request ("IRR") alleging he had been promised that he would be released into the general population (Doc. No. 28-11). In response to Plaintiff's IRR, Case Manager Tim McFarland indicated that Deputy Division Director Dwayne Kempker had placed Plaintiff on a single cell mandate due to his determination

that Plaintiff was a long term threat to other offenders and denied his request for immediate release from Administrative Segregation (Doc. No. 28-14).

On May 5, 2015, Plaintiff's classification status was again reviewed. The Committee noted that on March 11, 2015, Plaintiff received a conduct violation regarding the threat to his cell mate, and ordered him to continue his assignment, accrue no violations, and treat staff appropriately (Doc. No. 28-13).

Plaintiff filed a grievance in response to the resolution of his IRR on June 8, 2015, alleging he was being held in Administrative Segregation for an excessive period and requesting that he be released back into the population (Doc. No. 28-15). PCC Warden Cindy Griffith responded that his assignment was being reviewed in accordance with established policy and that based on his behavioral history, Administrative Segregation was appropriate (Doc. No. 28-16). Plaintiff appealed this response (Doc. No. 28-17).

At Plaintiff's August 8, 2015 classification hearing, the Committee ordered him to continue his assignment, accrue no violations, and to treat staff appropriately (Doc. No. 28-18). On September 10, 2015, the Deputy Division Director reviewed and denied Plaintiff's grievance appeal, citing the severe injury to Plaintiff's cellmate at SCCC for his finding that it was in the interest of the safety and security of the institution to keep Plaintiff in administrative segregation (Doc. No. 28-19).

On November 3, 2015 and January 26, 2016, Plaintiff's classification status was again reviewed and continued with the same conditions (Doc. Nos. 28-20, -21). On May 24, 2016, Plaintiff was moved to a two man cell (Id. at ¶ 16), and released from administrative segregation on July 12, 2016[5] (Doc. No. 28-22).

---

[5] No contention is made that Plaintiff's action has been mooted by his return to the general prison population.

**Legal standard**

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988). If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. Armour and Co., Inc. v. Inver Grove Heights, 2 F.3d 276, 279 (8th Cir. 1993).

**Discussion**

The Supreme Court has held that prisoners have a liberty interest, protected by the Due Process Clause, in avoiding conditions of confinement that "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Thus, to assert a violation of due process rights based on a liberty interest in avoiding confinement to administrative segregation, "an inmate must show that the segregation created an 'atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." Rahman X v. Morgan, 300 F.3d 970, 973 (8th Cir. 2002) (quoting Sandin, 515 U.S. at 484).

The Eighth Circuit has repeatedly held that an assignment to disciplinary or administrative segregation is not, in itself, an atypical and significant hardship. See Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010); Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003); Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002). While a prolonged or indefinite confinement in administrative segregation may constitute an atypical and significant hardship, see Williams v. Norris, 277 F. App'x 647, 648-49 (8th Cir. 2008) (almost 12 years in administrative segregation constituted atypical and significant hardship); King v. Lombardi, No. 4:17CV742 CAS, 2017 WL 2277190 (E.D. Mo. May 25, 2017) (continued segregation for 923 days implicates a liberty interest and stated a due process claim), confinement for time periods similar to, and even exceeding the time period at issue here, does not trigger due process protections. See, e.g., Orr, 610 F.3d 1032 (nine months in administrative segregation does not, on its own, constitute an "atypical and significant hardship"); Rahman X, 300 F.3d 973 (no atypical and significant hardship where segregation lasted 26 months); Hemphill v. Delo, No. 95-3357, 1997 WL 581079, at *2 (8th Cir. 1997) (holding that "four days locked in a housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation" does "not constitute an 'atypical and significant hardship' when compared to the burdens of ordinary prison life."); Driscoll v. Youngman, Case No. 95-4037, 1997 WL 581072 (8th Cir. Sept. 22, 1997) (finding that 135 days in disciplinary and administrative segregation without "meaningful exercise, natural light or adequate time in the library" was not an atypical and significant hardship).

Further, "where an inmate is held in segregation for a prolonged or indefinite period of time, due process requires that his situation be reviewed periodically in a meaningful way and by relevant standards to determine whether he should be retained in segregation or returned to

population." Kelly v. Brewer, 525 F.2d 394, 400 (8th Cir. 1975). It is undisputed that Plaintiff's status in administrative segregation was periodically reviewed to determine whether he should remain in administrative segregation or be returned to the general population; his status was reviewed seven times between his transfer to PCC and the filing of his lawsuit. Each hearing resulted in a decision to continue Plaintiff in administrative segregation based on his behavioral history. In addition to the periodic reviews of his classification status, Plaintiff was placed into double-man cells on three separate occasions, and each time he failed to successfully remain in that placement. Plaintiff was moved back to a single-man cell "for the security and good order of the institution." According to Earls, Plaintiff's confinement in administrative segregation was necessary for the safety and security of the institution, given the extreme violence of his attack on his cellmate and his inability to successfully remain in a two-man cell placement while at PCC (Affidavit of Alan Earls ("Earls Aff."), Doc. No. 28-2 at ¶ 15). However, Earls never ordered Plaintiff to be held in administrative segregation indefinitely (Id. at ¶ 14).

When viewed in the light most favorable to Plaintiff, this evidence demonstrates that the review of Plaintiff's situation by the Administrative Segregation Committee was meaningful and that the standard applied to his confinement was relevant to the danger he posed to the rest of the prison population. As a result, the Court finds that Plaintiff has been afforded the due process required by the Constitution. Thus, Plaintiff's § 1983 claim fails as a matter of law. Cf. Williams, 277 F. App'x. at 649-50 (reversing grant of summary judgment in favor of prison officials on inmate's due process claim based upon prolonged confinement in administrative segregation where they offered "no evidence whatsoever as to why they concluded, after each hearing before a committee tasked with reviewing Williams's housing status, that he remained a security threat").

**Qualified immunity**

Finally, "[q]ualified immunity protects state actors from civil liability when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Brown v. City of Golden Valley, 574 F.3d 491, 495 (8th Cir. 2009). To determine whether a state actor is entitled to qualified immunity, the Court must resolve two questions: first, whether the official deprived Plaintiff of a constitutional right, and second, whether that right was so clearly established as the time that a reasonable official would have understood that his or her conduct was unlawful under the circumstances. Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007). If no constitutional violation occurred, the evaluation ends there. See Crumley v. City of St. Paul, 324 F.3d 1003, 1008 (8th Cir. 2003) ("Without the requisite showing of a constitutional violation, summary judgment is proper because [plaintiff] has failed to establish the existence of an essential element of [his] case.").

As discussed above, the Court has found that the facts, even when viewed in the light most favorable to Plaintiff, do not demonstrate the deprivation of a constitutional right. Thus, Plaintiff fails to satisfy the first prong, and Earls is entitled to qualified immunity from Plaintiff's claims. Baker v. Bryan, No. 4:14-CV-333 JAR, 2015 WL 5735142, at *6 (E.D. Mo. Sept. 29, 2015).

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [27] is **GRANTED.** A separate Judgment will accompany this Memorandum and Order.

Dated this 27th day of June, 2017.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**